IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSALYN HEATER )
)
    Plaintiff, )
)
vs. ) Civil Action No. 06-1264 )
) ) )

IMPRO CORPORATION, DAN
PARRISH and BRADY TROUTMAN
    Defendant.

AMBROSE, Chief District Judge

# MEMORANDUM OPINION and ORDER OF COURT

    Rosalyn Heater, who is over forty years old, worked as a warehouse shipping clerk for Defendant Impro Corporation ("Impro"). Defendants Dan Parrish ("Parrish") and Brady Troutman ("Troutman") supervised and / or managed the warehouse during Heater's employment. According to Heater, they also participated in and fostered a campaign of sexual and age discrimination, harassment and retaliation directed against her. The discrimination consisted of, among other things, vulgar and inappropriate comments and, on a few occasions, unwelcome touching. The unlawful employment practices began on or about April 19, 2004 and continued even after she was unable to continuing working due to a disability in February of 2005.

    Heater has asserted claims against Impro under Title VII, 42 U.S.C. § 2000e et seq., Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621et seq., the EqualPayAct of 1963, 29 U.S.C. § 206(d) and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 et seq. She also

1

asserts claims against Parrish and Troutman for aiding and abetting employment discrimination.

Impro, Parrish and Troutman previously filed a Motion to Dismiss. See Docket No. [14]. The

Defendants urged that the Title VII, ADEA and PHRA claims were untimely because Heater failed to file her agency charge within the time allowed under those statutes. Though Heater offered several arguments to defeat the Motion,[1] I found only one convincing at that juncture - the doctrine of equitable tolling. As noted in my previous Opinion and Order (see Docket No. [26]), the basis for equitable tolling was Heater's mental state. Heater claimed that she was incapable of recognizing her legal rights andmanaging her legal affairs during the relevant period of time. She tendereda letter from her treating psychiatrist andtherapist which seemed to support her assertion in this regard. Accordingly, I denied the Motion, but allowed the parties to engage in limited

discovery on the issue.

That period of discovery has concluded. The Defendants have filed a Motion for Partial

Summary Judgment. See Docket No. [50]. Again, they contend that the Title VII, ADEA and

corresponding PHRA claims are untimely. The Defendants offer several arguments in support of

the entry of partial summary judgment in their favor. Specifically, the Defendants argue that

equitable tolling is no longer available in light of the Supreme Court's ruling in Ledbetter v.

---

[1] Heater also invoked the continuing violations doctrine in response to the Defendants' original timeliness challenge. She conceded that the last day she actually worked was February 4, 2005 (see Docket No. 24, p. 5), and that she stopped working on that day because of the "unbearable working conditions." See Complaint, p. 6. Yet she contends that the continuing violations doctrine applies because she was never formally terminated. She relies upon the decision rendered in Graham v. Avella Area School District et al, Civ. No. 5-1344 (W.D. Pa. June 26, 2006) (J. McVerry) for the proposition that, in a constructive discharge case, the limitations period begins to run upon the last day of work. Thus, Heater reasons, because she has not been terminated yet and has not yet worked her last day, and because Impro manifested continued retaliation when it refused to provide her with her W-2 forms in 2006, her claim must be timely. I disagree. First, the Graham decision is unavailing. Heater's last day of work was February 4, 2005. No formal letter of resignation or termination is required by Graham. Finally, I reject any contention that the failure to provide a W-2 is evidence of a continuing pattern of sex and age discrimination.

Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2007 WL 1528298 (May 29, 2007).[2] They further argue that, if Ledbetter has not foreclosed application of the doctrine, that "lower federal courts ought no longer exhibit unwarranted activism in creating equitable considerations that support disregard of these mandatory time periods." See Docket No. [51], p. 9.[3] Finally, the Defendants contend that, even if the doctrine of equitable tolling could be applied in circumstances of mental incompetence, the record evidence does not support the conclusion that Heater was mentally incompetent, or otherwise unable to manage her legal affairs.

Turning to the Defendants' third argument, I agree that, assuming that the doctrine is available, the facts in the case at bar do not warrant its application. Heater's own testimony, the documentary evidence and the testimony from the medical professionals involved in this case demonstrate that,[4] though Heater may have suffered periodic episodes of psychic pain, perhaps amounting to a depression, and Bipolar Disorder, she was neither incompetent nor unable to manage her legal affairs during the relevant period of time. Indeed, while Heater was undergoing voluntary, outpatient, psychiatric treatment in 2005, she admits that she remained

---

2

I disagree with the Defendants' reading of Ledbetter. The plaintiff in Ledbetter did not raise the equitable tolling doctrine, and the Defendants failed to identify any cases construing Ledbetter in this manner. In contrast, one of my colleagues has recognized that the Ledbetter decision did not address the doctrine of equitable tolling. See Mavrinac v. Emergency Medicine Assoc. Of Pittsburgh, Civ. No. 4-1880, 2007 WL 2908007 at * 6 (W.D. Pa. Oct. 2, 2007).

3

I reject the implicit suggestion that the denial of the Defendants' earlier Motion to Dismiss somehow constituted "judicial activism." I did not "exercise creativity" in excusing Heater's compliance with a deadline when I cited to the Third Circuit's decision in Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) (which recognizes the doctrine of equitable tolling) or when I cited to a decision by another district court in Pennsylvania, Harris v. Potter, Civ. No. 3-3522, 2004 WL 1613578 (E.D. Pa. July 16, 2004), which found that a plaintiff's mental illness can support the application of the equitable tolling doctrine.

4

I do not have a Brief in Opposition to Summary Judgment, nor a Response to Concise Statement of Facts before me. Heater was, however, given ample notice of the time frame within which this Court expected her to respond to any motion. On March 26, 2007 this Court instructed Heater that a response to a forthcoming Motion for Summary Judgment on the issue of mental competence would be due on August 5, 2007. See Docket Nos. [37] and [38]. On August 6, 2007, the day after her response was due, Heater filed a Motion for Extension of Time. See Docket No. [56]. Despite its untimeliness, I granted the Motion and instructed Heater to file her response no later than August 20, 2007. See Docket No. [57]. On August 20, 2007, the day her response was due, Heater filed a second Motion for Extension of Time. See Docket No. [58]. That Motion was opposed (see Docket No. [59]) and I denied the requested extension. See Docket No. [61]. When Heater nevertheless tried to file her response eleven days thereafter, I granted the Defendants' Motion to Strike. See Docket No. [66].

3

able to dress herself, drive, manage her financial affairs, maintain her scheduled medical appointments and shop. See Heater Dep., Vol. II, p. 26-30. Heater also admits that she met with several attorneys during the 2005 time frame in order to pursue a worker's compensation claim and the harassment claim which forms the basis of this suit, as well as a Social Security disability claim. Id., Vol I, p. 4246, 54-56, 69-71 and Vol. II, 24-30, 33-38. Heater similarly admits to having spoken with OSHA officials about matters underlying this suit. Id. Heater was also competent enough to have written a letter to Impro in March of 2005 in which she detailed all the reasons she was unhappy and angry with her working conditions. Id., Vol. I, p. 49-52.

The documentary evidence confirms Heater's admissions. In May and June of 2005, the same time she now claims to have been incompetent to manage her legal affairs, Heater applied for Social Security benefits. See Docket No. [50-4], Ex. G. Following the denial of that application, which occurred in November of 2005, Heater retained an attorney to handle the appeal. See Docket No. [50-4], Exs. H, I and J.

The medical professionals involved in this case confirm that Heater was competent to manage her legal affairs during the relevant period of time. Dr. Ashraf Helmy treated Heater during the period of her partial hospitalization. He stated that he saw no reason to question her competence and did not believe that she needed to be involuntarily or voluntarily committed. See Docket No.[50-4], Ex. M, p. 78. Neither did he consider having a guardian appointed for her. Id., p. 79. Indeed, Helmy discussed with Heater the possibility of her obtaining legal help with respect to the very matters at issue in this lawsuit. Id., p. 177-78. Dr. Helmy believed from this conversation that Heater "was able to process her thoughts and understand her legal rights and even ask what could be done about the situation." Id., p. 178. According to Dr. Helmy, he "didn't see any evidence toward that impairment cognitively or in an emotional sense that would make her unable to process or proceed with any legal benefit or rights she might have." Id., p. 179-80. When asked directly whether he believed her perfectly competent to pursue a lawsuit during her participation in the partial hospitalization program, he responded that she was. Id., p. 180.

    Dr. Kathi Menon, Heater's psychiatrist, echoed Dr. Helmy'sstatements. She confirmed that

she never instituted proceedings for Heater's involuntary commitment; that she never notified the

Pennsylvania Department of Motor Vehicles that Heater was so impaired as to be unable to drive;

that she never instituted proceedings to have a guardian appointed to manage Heater's affairs and

that she never tried to have her committed to a hospital. See Docket No. [50-4], Ex. K, p. 79-80.

Similarly, Lynn Valencic, Heater's social worker, took none of those steps. Id., Ex. L, p. 132-33.

Indeed, the following exchange makes clear that Valencic, who actually dictated the letter

referenced in my earlier Opinion[5], believed that Heater was capable of managing her legal

affairs

during the relevant period of time:

> Q: Okay. And given your knowledge of her history of her doctor's diagnosis, clinical assessments and her medical history, the prescription agenda with respect to Rosalyn Heater, did you ever believe during the course that she was being seen by you that she was capable of handling her own legal affairs?
> A: <u>She was capable.</u> She was just totally overwhelmed with - <u>technically she was capable.</u> She was not disoriented. ...

Id., p. 139-40.

---

5

In the Opinion disposing of the Motion to Dismiss, I referenced a letter I now understand to have been authored by Lynn Valencic, Heater's social worker. At the time, I erroneously believed it had been authored by Dr. Kathi Menon, Heater's psychiatrist. The letter read in part that the severity of Heater's psychiatric symptoms "impaired her ability to recognize her legal rights and handle her legal affairs from March 2005 through March 2006." See Docket No. [23-4]. Certainly Valencic's testimony, as set forth above, completely discredits the statements in her letter.

A psychiatrist retained by the Defendants who studied and analyzed Heater's medical and psychiatric records also found, to a reasonable degree of psychiatric certainty, that "[w]hile Heater's condition between March 2005 and March 2006 apparently included the hypomanic and depressive episodes that characterize Type II Bipolar Disorder, she remained competent to manage her own affairs and was not incapacitated or otherwise unable to recognize or manage her legal rights and related concerns during that period." See Affidavit of Lawson Bernstein, M.D., Docket No. [50-4], Ex. D. P. 22. Obviously, Heater has not submitted any evidence contradicting Dr. Bernstein's conclusions.

In sum, the overwhelming evidence of record, indeed the only evidence of record, demonstrates that Heater was able to protect her legal rights and affairs during the relevant period of time. In fact she took several steps to explore, pursue and protect various legal rights. Heater acknowledged that her decision to initially forego filing discrimination and harassment claims against Impro stemmed from an attorney's advice that the claims were not strong absent a corroborating witness. See Docket No. [50-4], Ex. C, p. 37-40. She had "let those claims go" until she met present counsel in February of 2006. Id. Accordingly, the Motion for Partial Summary Judgment is granted. Judgment is entered in favor of the Defendants and against Heater with respect to her claims arising under Title VII, the ADEA and the corresponding PHRA claims.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| ROSALYN HEATER<br>    Plaintiff, | )<br>)<br>) |
| vs. | )<br>) Civil Action No. 06-1264 ) |
| IMPRO CORPORATION, DAN PARRISH<br>and BRADY CORPORATION Defendant. | ) ) ) |

AMBROSE, Chief District Judge

## ORDER OF COURT

AND now, this 8th day of February, 2008,

upon consideration of the Defendants' Motion for Partial Summary Judgment (Docket No. 50), the

Motion is GRANTED. Judgment is entered in favor of the Defendants and against Plaintiff on the

claims arising under Title VII and the ADEA and the corresponding PHRA claims.


                            BY THE COURT:

                            /s/ Donetta W. Ambrose
                            Donetta W. Ambrose, Chief
                            U.S. District Judge